# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | Chapter 13 Case |
| VERA T. JENNINGS | ) | Number 14-40206 |
| *Debtor* | ) | |
| GALIN MORTGAGE LENDING, LLC | ) | |
| *Movant* | ) | |
| v. | ) | |
| VERA T. JENNINGS<br>and<br>O. BYRON MEREDITH, III, TRUSTEE | ) | |
| *Respondents* | ) | |

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
*By cramirez at 11:17 am, May 15, 2014*

**OPINION AND ORDER**
**ON MOTION FOR RELIEF FROM STAY**

The above-captioned case came on for hearing on April 9, 2014. After consideration of the parties' stipulations, the evidence, and applicable law, I make the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

Galin Mortgage Lending, LLC ("Galin") filed a Motion for Relief from Stay on February 6, 2014, relating to property located at 519 East 37th Street, Savannah, Georgia

(the "Property"). Dckt. No. 10.[1] It also opposed a Motion for Extension of the Automatic Stay filed by Vera Jennings ("Debtor"). Dckt. No. 22. By Order of this Court entered March 20, 2014, the Court found that under the circumstances in this case, Debtor was under no obligation to seek an extension of the automatic stay and denied Debtor's Motion, thus leaving the stay in effect. Dckt. No. 32. The Court further held that Galin's Motion for Relief from Stay would be heard on April 9, 2014, at which time the Court would also entertain the question of whether the automatic stay should be retroactively annulled, effectively affirming the foreclosure sale which occurred February 4, 2014. *Id.* At the outset of the hearing, the parties stipulated to incorporating into the record the evidence received and the facts established at the March 5, 2014, hearing; therefore, I repeat verbatim the Findings of Fact from this Court's Order of March 20, 2014, herein:

> Debtor filed her first voluntary petition for relief under Chapter 13 on October 5, 2009. She completed the case on October 5, 2012, and received a discharge from the Court on January 22, 2013. During the pendency of the case, the Court issued an Order granting Galin's Motion for Relief from Stay, however Galin never exercised its right to foreclose on the Property.
>
> Debtor filed a second voluntary petition under Chapter 13 on January 2, 2013. The case was later converted to a proceeding under Chapter 7 after Debtor defaulted under the terms of a strict compliance order regarding the Property. The Chapter 7 trustee ultimately

[1] For this Order, citations to Debtor's current bankruptcy case [14-40206] will appear as "Dckt. No. ___"; citations to her first case [09-42255] will appear as "Ch. 13 Case No. 09-42255, Dckt. No. ___"; and citations to her second case [13-40003] will appear as "Ch. 13 Case No. 13-40003, Dckt. No. ___".



AO 72A
(Rev. 8/82)

> abandoned the Property on November 4, 2013, and a consent Order was entered granting relief from stay for the Property on November 27, 2013. Because Debtor did not file Official Form 23, Debtor's Certification of Completion of Instructional Course Concerning Personal Financial Management, the Court closed the case without discharge on December 4, 2013.
>
> In reliance on the Order granting relief from the automatic stay, Galin advertised the Property for foreclosure and sold it at public auction on February 4, 2014. On February 3, 2014, Debtor filed her third voluntary Chapter 13 petition. Galin did not receive any notice regarding the new case until February 6, 2014, when it received postal notice from the Clerk's Office. Debtor filed this Motion for continuation of the automatic stay past the thirty (30) day limit of 11 U.S.C. § 362(c)(3). Galin filed an Objection and requests that the Motion be denied as to Galin, effectively affirming and ratifying the foreclosure sale of February 4, 2014.

Dckt. No. 32 (citations omitted).

## CONCLUSIONS OF LAW

As it pertains to the specific Motion before the Court, Galin seeks stay relief under 11 U.S.C. § 362(d) which states in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;



AO 72A
(Rev. 8/82)

> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization . . . .

After considering all of the evidence and applicable authorities I agree with Galin that stay relief should be granted.

The initial inquiry of § 362(d)(2) is a simple one since there is no dispute as to the lack of equity in the Property. In such cases the burden shifts to the debtor to prove that the property is necessary for an effective reorganization. *See* 11 U.S.C. § 362(g). The test for establishing necessity under § 362(d)(2)(B) was articulated by the Supreme Court in United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375-76 (1988):

> What [necessary to an effective reorganization] requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be a reasonable possibility of a successful reorganization within a reasonable time.

(Citation omitted)(internal quotation marks omitted). This Court has previously held that "necessary" means the property is logically required for the success of the plan. In re



AO 72A
(Rev. 8/82)

Simmons, 446 B.R. 646, 649 (Bankr. S.D. Ga. 2010). In fact here, as discussed *infra*, the evidence clearly shows that the Property actually acts as a drag on Debtor's resources, virtually eliminating any possibility of Plan success.

The evidence reveals that Debtor purchased her home, which was actually in the nature of a gift, from her father in late 2007. It had no debt on it at that time but needed extensive renovations. Debtor obtained a construction loan for that purpose and spent approximately $160,000.00 on the renovations, essentially rehabilitating the entire house with all new systems, making it desirable for occupancy.

In June 2008 Debtor obtained permanent financing from Galin which paid off the construction loan. She filed a Chapter 13 case in October 2009 when she fell behind on her regular monthly payments to Galin. Ch. 13 Case No. 09-42255, Dckt. No. 1. The Court granted Galin's Motion for Relief in that case, and Debtor's Motion for Reconsideration was later denied. Ch. 13 Case No. 09-42255, Dckt. Nos. 53, 61. However, no foreclosure was ever initiated. It is important to point out that between the time she filed her case in October 2009 and February 2010 when Galin filed its Motion for Relief from Stay, Debtor had already defaulted on multiple post-petition monthly payments, which triggered the Motion.

Debtor filed a second Chapter 13 case on January 2, 2013, and again



AO 72A
(Rev. 8/82)

defaulted on post-petition payments, triggering a Motion for Relief and Strict Compliance Order for cure. Ch. 13 Case No. 13-40003, Dckt. Nos. 1, 32, 38. Pursuant to the Strict Compliance Order, the case was converted to Chapter 7 when Debtor failed to make the required payments. Ch. 13 Case No. 13-40003, Dckt. No. 48. The trustee ultimately decided there was no equity to be administered for the benefit of creditors and abandoned the Property at which time a Consent Order granting stay relief was entered. Ch. 13 Case No. 13-40003, Dckt. Nos. 59, 61. Debtor did not attend a hearing on the matter nor sign the Consent Order; however, once a trustee abandons property from the estate, a debtor is unable to establish any defense to a stay relief motion.

An examination of the schedules in Debtor's three cases show that her disposable income has essentially remained the same. She shows $514.50 per month in disposable income according to her amended budget in this case. Exh. M-3. This figure takes in to account $700.00 per month in rental income from a roommate who has moved in to the premises within the past six months. Accordingly, based solely on Debtor's earned income, she has less disposable income than in any of her previous cases.

Pursuant to Debtor's amended Plan, she proposes to cure the arrearage, which she believed to be $17,000.00, and pay other claims as called for in the Plan by increasing her original plan payment to $500.00 per month. Dckt. No. 36. That projection was based on a misunderstanding of the arrearage, and in fact, as determined at the hearing



AO 72A
(Rev. 8/82)

and confirmed by communication from the Chapter 13 Trustee, the arrearage figure representing twenty-one months without a payment including late fees and insurance totals $42,541.96. Dckt. No. 53. This would require the plan payments to increase to $999.00 per month, beginning with the May 2014 payment, in order to cure this pre-petition arrearage over the remaining fifty-eight (58) months of the case. Dckt. No. 56.

Even now, despite the $700.00 per month in rental income from her roommate, Debtor's amended budget reveals no ability to pay a higher monthly amount to cure the arrearage than she is presently making. The shortfall in Debtor's budget is sufficient basis on which to find that it is not feasible on a forward looking basis for her to maintain the regular payments and make substantial cure payments as proposed in her Plan. Although Debtor's 2013 case failed principally because she suffered on-the-job injuries and a reduction in income for some period of time, at no time since her construction loan was paid off and her permanent financing was put into place has Debtor shown the ability to maintain regular payments with her other budgetary constraints.

Projecting five years into the future with no equity to protect Galin and insufficient cash flow to pay the cure amount, I conclude that she has not and cannot demonstrate that this home is "logically required" for the success of her Plan. In fact, the house, with its large arrearage, is an insurmountable detriment to the success of the Plan. Because there is no equity in the Property and because it is not necessary to an effective



AO 72A
(Rev. 8/82)

reorganization, relief from stay will be granted pursuant to 11 U.S.C. § 362(d)(2). For these same reasons, I find that Debtor cannot provide adequate protection against further erosion in Galin's interest, and therefore cause has been established for granting stay relief under 11 U.S.C. § 362(d)(1).

The Court will now address whether or not to retroactively annul the automatic stay, effectively affirming and ratifying the foreclosure sale of February 4, 2014. The Eleventh Circuit has recognized the bankruptcy court's ability to annul the automatic stay in "limited circumstances," thus granting retroactive relief. In re Albany Partners, Ltd., 749 F.2d 670, 675 (11th Cir. 1984). The court "acknowledge[d] that the important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay." *Id.* (footnote omitted).

The following requirements have been utilized by this Court when deciding whether to grant retroactive annulment of the stay.

> First, the creditor must demonstrate that it justifiably believed its action did not violate the automatic stay. In other words, the violation must not have been willful. Second, the creditor must prove that it did not violate the policies underlying the automatic stay by showing that its actions did not interfere with the breathing spell created by the stay and that its foreclosure had no negative impact on other creditors.



AO 72A
(Rev. 8/82)

Lugo v. Islands Motorsports, LLC (In re Lugo), 2014 WL 1330213, at *7 (Bankr. S.D. Ga. April 1, 2014)(Davis, J.)(*quoting* In re Lamb, 465 B.R. 714, 718 (Bankr. S.D. Ga. 2012)(Barrett, J.))(internal quotation marks omitted).

With respect to the first requirement, Debtor has conceded that Galin had no notice of her new case on the date of the foreclosure sale. As mentioned *supra*, Galin first received notice of the case from the Clerk's Office on February 6, 2014. Galin had no reason to believe it was violating the stay when it had no knowledge that there was a stay in effect. With respect to the second requirement, relief from stay had already been granted in the previous case to foreclose on the Property, so there is no need for Galin "to prove its foreclosure had no negative impact on other creditors." Lamb, 465 B.R. at 718 (citation omitted)(internal quotation marks omitted). Galin's actions have not interfered with the breathing spell created by the stay. Galin has not recorded its deed, and since the foreclosure sale, Debtor has remained in possession of the Property while she awaits the Court's decision on Galin's Motion. That is over one hundred (100) days of breathing spell which would not have existed without the filing of Debtor's new case. To force Galin to start the foreclosure process over at this point would do nothing more than add to its expenses and further erode its interest in the Property. The equities here favor Galin, and therefore, I find that retroactive annulment of the automatic stay is the appropriate remedy.



AO 72A
(Rev. 8/82)

ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is the ORDER of this Court that Galin's Motion for Relief from the Automatic Stay is granted. It is further ORDERED that the stay relating to the Property is hereby retroactively annulled. The foreclosure sale of February 4, 2014, is affirmed, and Galin may complete the sale by recording its deed.

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 14th day of May, 2014.



AO 72A
(Rev. 8/82)